Case number 20-1155. Packard Square LLC versus Canyon Partners LLC at all. Arguments not to exceed 15 minutes per side. Mr. Ackerman, you may proceed for the appellant. Thank you. Good afternoon, your honors. May it please the court, my name is Nathaniel Ackerman. I'm representing Packard Square in this appeal. I'm reserving two minutes for rebuttal. The critical issue that I'm going to argue today is that the RICO claims in this case are based on a separate transaction from the subject of the state court action. The core set of operative facts between the state court action and the federal RICO claims are different and distinct. Packard Square's state court counterclaim was claims were seeking the cost-effective construction of Packard Square's project in Ann Arbor, Michigan. So Packard Square could refinance the Canfor loan with a new lender. This case is about a massive criminal scheme to steal Packard Square's project that was part of the defendant's pattern of stealing 10 other projects since at the time. Did the scheme involve this project as well, though? Yes, it did. It did. I will get into that a little bit more, but the differences are quite evident when compared under the Michigan transactional test in the Adair case. That is whether the facts and the action are pragmatically related in time, space, origin, motivation, and whether they form a convenient trial unit. First, the two actions do not form a convenient trial unit and are two distinct trial units. The state case was solely focused on breach of contract claims between the entities Packard Square and Canfor. It concerned defaults relating to milestones to subcontractors' liens and construction conditions. The issue was which party defaulted first under the contracts, and the counterclaims sought to put Packard Square back in control to complete construction cost-effectively. I'm sorry, what did your counterclaims allege? They alleged all contract causes of action, breach of contract, lender liability, etc. There were about five claims that could not have been asserted as counterclaims. We didn't even know about them at the time. We didn't have the evidence to even bring them when we filed our counterclaims. We didn't learn that evidence until some 17 months later. There was no way we could have filed them in the beginning. We would have gotten dismissed. If we just put it in, we wouldn't have the particularization that we needed to underline the mail and wire fraud claims. No way we could have done it. But you can see that you knew them by March 2018, right? Isn't that the critical time period? The state suit still had over a year before a final judgment sometime in 2019, so there was a substantial overlap between when the RICO allegations, you knew of them, and when the state claims were still proceeding. That's correct, but we were not required to do it because they're separate transactions, and that's the issue I'm getting into now, looking at the ADAIR standard. First of all... I thought to determine whether something is a separate transaction, your first requirement was time. That's right. And doesn't that just prove the point that there was substantial time overlap? I recognize that you're suggesting that the RICO conspiracy or whatever you call it, the RICO activity continued post-judgment, but it at least began, and there were substantial actions during the time of state court allegations too. That is true, but the question is the time, the facts that were litigated in the state court action covered only six months of activity from the defaults in July of 2016 until the filing of the second amended counterclaims on January 17, 2016. The RICO pattern here covers 13 years. There's only a six-month overlap. If you just take the action, that part of the pattern that relates to Packard Square and remove the 10 of their victims, the criminal acts against Packard Square covered nearly five years. That was the time period prior to entering into the loan agreements to 2019 when the defendants caused the receiver not to release the property until Packard Square's redemption rights were extinguished, and that was in June 2019. So in terms of the time period, the time periods are completely different here. As to the element of space, which is another element under ADARE, the cases are also different. The breach of contract claims only occurred in Ann Arbor, the construction site, and Los Angeles from where the default notices were sent. In contrast, the criminal acts in the RICO claims include those two locations plus New York, plus when you get with the other 10 victims, we're talking about Palo Alto, Los Angeles, Miami, Broward County, Florida, Georgia. How far does your argument go? So you're basically now relying on the victims a lot more than you did before maybe. What if your RICO claim solely with respect to the Ann Arbor project had been asserted along with the breach of contract claims? Would the fact that your later suit asserted that as well as these 10 other victims have saved it from Michigan's rest judicata rule? I think that what saves it from the rest judicata rules is it's a separate transaction. The breach of contract claim, as I said, was completely different. If you look at the federal RICO claims, they allege that what Packard Square was a victim along with 10 other developers, that the RICO claims include six additional defendants, individual defendants, two corporate defendants that were not parties in the state action. Prior to entering into the loan agreements to finance the construction, the defendants plotted to force Packard Square into default and steal its project. Once closed, they created Boca's defaults and tried to force Packard Square into signing a deed in lieu of foreclosure and then sued for a receiver. To obtain that receiver, the defendants lied to the state court. The defendants then manipulated the receiver to prevent the defendants from reclaiming the property from the receiver. The defendants engaged in two separate schemes to prevent Packard Square from refinancing. When Packard Square filed for a bankruptcy protection to refinance, the defendants lied to the bankruptcy court about the value and debt balance. The court based its decision on those lies to dismiss Packard Square's Chapter 11 petition. In addition, if you look at the point of origin of this case, the state action originated from loan agreements. There was nothing else other than those contracts. The RICO claims originated as early as 2006, whereby the defendants began victimizing 10 other developers to steal their properties using the same fraudulent methods and means as here. The point of origin is the defendant's way of conducting their business as a criminal enterprise. The best example here is College Terrace, which we also allege in our complaint, that occurred simultaneously with the defendant's plot to steal Packard Square's project. Defendants employed the same fraudulent method of using bogus defaults, paragraph 37 of our complaint. Here the allegation is that loan funds were withheld as part of the corrupt plan to squeeze Packard Square so they could not meet There's breach of contract, but there was also tortious interference, breach of fiduciary duty. You actually allege in the state court counterclaims that there was an unlawful scheme. Let me address the unlawful scheme because that's totally misleading. If you look at it, the unlawful scheme relates to one single incident. It's like what the defendants have done here. They've taken little snippets out of context that only relates to the Newbank's situation and firing Newbanks. At that time, we had no idea that the firing of Newbanks was part of a much larger scheme to basically steal the entire property. You would concede though, wouldn't you, that a lot of your allegations in the state court claim are specific examples of the broader scheme? No, none of them are. You can name any one of them and if you put it in the But that related to getting the developer, Packard Square, back into the situation. It had nothing to do with stealing the property from the get-go. What the defendants have done here, the appellees have done, is basically taken a lot of snippets out of context. I can go through one of them here and show you that they all relate to getting the property back into the hands of the developer so that they could continue the construction and do it more economically than the receiver was doing at the time. That was what the state case was about. The RICO case is about an intentional theft of property that is part of what these defendants have been doing over the years from as early as 2006 with 10 other properties using the same methods and means. I mean, College Terrace is a case in point where, in fact, at the same time, Packard Square was, they were involved with crack Packard Square. They were doing the same thing to College Terrace. Again, these were items that were precisely the same and I invite the court to compare what's in the complaint with respect to these other victims. In addition, none of the following criminal schemes alleged in the RICO claims were alleged in the breach of contract claims. One, intentionally entering into loan agreements with the intent not to honor them and to steal Packard Square's project. Two, attempting to force Packard Square into signing a deed in lieu of foreclosure to steal the property. Three, lulling Packard Square into believing the statements to the state court to install the receiver. Five, slowing construction during the receivership to charge more interest. Six, preventing free financing in two ways by making impossible for Packard Square to assume construction contracts and by intentionally not providing customary payoff letters. Seven, not leasing to artificially depress the project's value until after Packard Square's redemption rights were extinguished. Eight, the defendant's value of Packard Square's property. Nine, the 10 other victims obviously had nothing to do with the loan agreements that were at issue in the state court case. The bottom line is, this case is unlike any of the nine RICO cases relied upon the appellate defendants here, where the defendant's RICO action is based on the same facts alleged in the first action, or where those facts were known or should have been known to the plaintiff when it filed its action. None of these cases that they rely on allege a real pattern of racketeering activity such as we have here. None of those cases could have been brought by the Department of Justice. This case is a real RICO case. It involves real criminal activity that has nothing to do with breach of contract. The breach of contract here is simply background information to explain the contest here, the state court's finding that it breached the loan agreements by not meeting the strict calendar dates for the milestones in the agreements. Indeed, the RICO claims do not contest any of the findings of the state court. What the RICO claims allege in part is that the defendants lulled Packard Square into breaching the contract by falsely promising that it would not enforce the miles. Doesn't that suggest that a fraud claim for the difference between a fraud claim and a breach of contract claim is often the defendant's intent? Could you avoid res judicata for a state court fraud claim simply by saying, I didn't know that the defendant never intended to live up to the promises in the contract until after... No, because this is more than just fraudulent intent. These involve specific facts. We have evidence that is detailed in utmost particularity in this complaint that shows that right from the get-go, these defendants intended never to honor those contracts. We didn't know about that until much later when we came up with emails and documents in discovery. This also... We also didn't know about the fact that there were 10 other victims and that one of them was being victimized in another college town in Palo Alto, as opposed to Ann Arbor, where they were basically perpetrating the exact same fraudulent scheme. This breach of contract, if you look at all of the allegations that we have in our counterclaim, they all relate to simple breach of contract. The defendants breached this, they breached that, and that's it. It's not a criminal... We don't allege any kind of criminal scheme, and it doesn't just rely on the fraudulent intent. I mean, that does go to motive, one of the factors under a dare. The motive here clearly is relevant, but it's one of the factors. If you look at all of the factors, the breach of contract, in terms of this action, simply provides the background information through which these defendants perpetrated this massive scheme. All right, Mr. Ackerman, you're out of time. You can use your two minutes rebuttal now if you want, or you can save it. I'll save it, your honor. Okay, any further questions? Judge Batchelder, do you have any questions? No, thank you. Not at this point. Judge Murphy, any further questions at this point? No. Okay, all right. Let's hear from the FLE, counsel for FLE. All right, this is my Zoom version of raising the podium. Thank you, your honors. May it please the court, David Carpenter for the Canyon defendants. There's no getting around that Packard Square is trying to use the RICO claims to collaterally attack the state court proceedings and the state court judgment. The RICO complaint itself explicitly pleads as part of the criminal acts and conspiracy, quote, foreclosing on Packard Square's property without any evidentiary hearing or admissible evidence of Packard Square's alleged defaults. So when Packard Square now says that their RICO claims are not in any way challenging any finding of the state court, that's simply false. It is lie by their own complaint. Where the state court has found that it was lawful and proper for Canyon to pursue foreclosure, plaintiffs cannot now turn around and say that it was criminal for Canyon to pursue and obtain foreclosure. So I'll address the race to the caught point. That seems to be what they have focused. I'll note that the collateral estoppel is an independent ground for dismissal and for affirming the dismissal with respect to specific allegations being alleged in the RICO complaint. But let's start with Michigan law. It's undisputed that Michigan law applies. It applies to the transactions test, which does not depend on whether the elements themselves are specifically the same. It applies to alternative theories of liability. So here in the state court, we had not just breach of contract, but also lender liability, conversion. We had tortious interference. We had different variations of deceit and misrepresentations to the court being allowed, alleged in addition to an explicit misrepresentation claim at one point. So if there says the transactional test encompasses all of that, even when there are alternative theories of pleading, even when the alternative theories might rely on slightly different evidence or slightly different framing of the facts. And here's where there's actually overwhelming overlap between what was actually pleaded in the state court and the predicate acts to the RICO claims with respect to Packer Square. And in fact, a lot of Mr. Ackerman's presentation hits on things that are explicitly alleged in the state court counterclaim. Well, what do you do with the best argument on the other side? It seems to me that a lot of the conduct happened after the original state court counterclaims. And the notion that a suit shouldn't be res judicata for actual facts that happened after the suit goes to final judgment. I know there's a lot of interim, but most of the facts happened when the suit was ongoing. There may have been some facts that happened after the final judgment, but presumably not since they filed before then. But how would you respond to that argument? Correct. So with respect to the 2017 allegations, those are challenges to the conduct of the court appointed receiver that's occurring under the supervision of the state court. And in fact, was subject to motion practice in the state court. And under Buck and Dubuque, which are this court's precedents, there is in fact a duty to supplement with related factual allegations that develop during the pendency of the lawsuit. And to go a step further in Musicia, which is the eighth circuit case we cite in page 34 of our brief, Musicia actually cites Dubuque in the RICO context saying that where the core RICO dispute has already been resolved or was pleaded or able to be pleaded in the prior action, the fact that you're trying to tack on some further predicate acts doesn't save your RICO claim. The ninth circuit's decision in Monterey Plaza is also in the RICO context. It's the same effect. But let's take it even a step further because Mr. Ackerman acknowledged that the state court litigation was about first step filing the lawsuit and the defaults and obtaining the receiver. And Mr. Ackerman acknowledged that the state court litigation was largely over Packard Square's attempt to arrest control of the property back from the receiver. That is what in fact the state court litigation was about. And that is what the 2017 RICO allegations are about. So not only do they fall under the rubric of Buck and Dubuque, but they're also merged in the foreclosure judgment itself. So a point into the foreclosure judgment is RE22-4, where the state court not only finds that there were in fact defaults, it not only finds that Canyon was entitled to foreclose, but it actually finds that the amount of the foreclosure judgment includes ongoing amounts that accrued while the receiver was in control of the property. It finds that there were ongoing defaults while the receiver was in control of the property, but quote, through no fault of his own, i.e. through no fault of the receiver's own. So the challenges to the receiver's conduct in 2017 simply merge into the foreclosure judgment. And even if they didn't, they are things that were required to be alleged under Buck and Dubuque as well. I think the same point goes to the bankruptcy proceedings, the allegations about the fraud, alleged fraud of the bankruptcy court. The bankruptcy proceedings themselves were simply designed to oust the receiver and return control to the debtor in possession. And that's clear in the bankruptcy court's order, which is recited in our district court decision dismissing these claims on Restudicada and Claude Rostoppel. It's also clear in the district court order affirming the bankruptcy dismissal. Well, what do you do for the bankruptcy order? Restudicada is broader because it covers things that could have been decided. I understand Claude Rostoppel to cover issues that were actually decided. And the state court decision on your counterclaim said nothing about the federal bankruptcy, the alleged fraud of the bankruptcy. There might be other issues like that. So if we're in the collateral Rostoppel camp, there might be other issues like that, that even accepting all the issues that the court found in the state court counterclaims, there was no breach of contract, no bad faith. Perhaps they still have enough of an actionable RICO claim based on other issues that weren't decided yet, if all we have is collateral Rostoppel. Well, I think ultimately though the collateral Rostoppel, it blesses the validity of the foreclosure and it finds that there was no bad faith. If there was an ongoing pattern and practice of allowing the foreclosure to occur based on misrepresentations that prevented Packard Square's refinancing of the property, that would have been something that could have been and should have been litigated within the unclean hands defense to the breach of contract claims to the foreclosure judgment. So I believe that also that is something that effectively is foreclosed by Packard Square. But there's no issue. You would concede though, there's no express issue on any alleged fraud on the bankruptcy court. There's no finding. That is correct. That is correct. So it's more of an implied? Yes, correct, Your Honor. I think it is implied as assumed within the foreclosure judgment and a dismissal of counterclaims. And no, under Buck and Dubuque, clearly they could have used the bankruptcy proceedings either as further evidence or to supplement the ongoing litigation in the state court given that the bankruptcy proceedings happened prior to either the foreclosure judgment or the state court counterclaims being dismissed. I want to address the argument about the wrongdoing to the others, the other aspects of the conspiracy. So as Judge Murphy, you pointed out, if the foreclosure on Packard Square was lawful and proper as the state court found, then the wrongdoing to others is ultimately immaterial because the harm to Packard Square is negated by race judicata and collateral estoppel. We'll also note that the allegations of this other conduct in the RICO complaint largely predates the Packard Square loan. It predates the filing of the counterclaim. So there are things that could have been alleged with reasonable diligence based on what Packard Square itself alleges as things in the public record. And further, the Supreme Court is clear that the accrual of a RICO claim is based on your own RICO injury and not discovery of alleged other wrongdoing. So it doesn't affect Packard Square's obligation to have pleaded the RICO claims, if at all, from the outset. And I want to go back to really emphasize the idea of why there is a complete overlap between the RICO allegations. We have in the state court counterclaims themselves, allegations of conversion and wrongful withholding of funds. The state court found there was no conversion and wrongful withholding of funds. That negates one aspect of the RICO claim. We found within the RICO claims and the state court counterclaims, they allege bogus default notices. They allege wrongful failure to negotiate and to excuse the default failure to negotiate the milestone dates. That is the predicate of both the state court counterclaims and the alleged fraud claims. They allege in the counterclaims themselves, misrepresentations in court and misrepresentations designed to install the receiver that is specifically alleged in the counterclaims. It then becomes part of the RICO claims. And as we discussed before, the 2017 allegations are simply continuing manifestations of that same core thing alleged in the state court counterclaims that there was deceit to install the receiver and to have the receiver control and sabotage the property to Alice Packard Square of its interests. The state court counterclaims also themselves included various allegations of excessive control over property and business decisions and financial affairs of Packard Square. All of the RICO allegations with respect to Packard Square relate to that same motivation, the same origin name of the Packard Square loan. It involves the same court time period, which is the lead up and then the prosecution of the state court action. I think I've addressed the questions that have been raised by the court. I do want to emphasize that on collateral estoppel, the critical issue is whether a question of fact essential to the judgment was actually necessarily decided. It doesn't mean that every element needs to be the action based on a finding or a theory that directly contradicts the finding in the first action. I still find that a little trickier than REST Judicata because REST Judicata doesn't get into the actual elements. So what would you say, in order for issue preclusion to absolutely end the RICO claim, wouldn't there have to be a RICO element that the plaintiff would need to issue by a finding of fact? And so what is the RICO element that would be foreclosed and what is the finding of fact that forecloses it? Right. It was wrongful and fraudulent and criminal to pursue foreclosure when the state court held that foreclosure was lawful. I mean, RICO has elements. I don't know that wrongfulness. It has specific elements you have to prove. There has to be an enterprise. It has to have engaged in predicate crimes. I assume that what so would be like you can't prove mail fraud or wire fraud because of one of these findings of fact. Correct. For example, you can't prove wire fraud based on conversion when the state court found there was no unlawful conversion. You can't prove wire fraud or mail fraud based on misrepresentations or fraud in the default notices. When the state court held that the default notices were valid, there was no obligation to excuse them and there was no bad faith in pursuing the lawsuit based on those default notices. For example, if you go through it ends up wiping out the entirety some effect of the RICO claims. All right. Mr. Carpenter, the district court granted the motion to dismiss on the basis of both raised judicata and collateral estoppel. And the argument about collateral estoppel is interesting and it is somewhat difficult. But the district court can be affirmed on either basis. In your view, is it easier to resolve the case on raised judicata and would you maybe advocate that we just go that route? I know it would take a lot of wasted effort and if we don't have to do an analysis of collateral estoppel, I'd rather not. That's all. Your Honor, we think it is clearly barring a raised judicata and so you can absolutely stop at that stage, although we believe both are fine. Sure. Sure. Okay. I understand. All right. You still got another minute if you want to wrap it up? I absolutely sure. I will wrap it up and I'll point out that the state court was heavily litigated. There were dozens and dozens of motions on discovery involving the receiver on other matters. There were motions for reconsideration. There were interlocutory appeals. There were petitions for review to the Michigan Supreme Court and motions for reconsideration of the denial of a petition for review. The recourse Packard Square has for any wrongdoing is in the Michigan state courts, not in this action. Raised judicata exists precisely to bring finality to a situation like this and to end serial and vexatious litigation. Actually, this federal RICO case was filed while the state action was still ongoing, was it not? Correct, which only confirms that it could have been raised in the state court proceedings. No, it was still an ongoing state court action. All right. Any further questions, Judge Batchelder? No, I guess not. Okay. Judge Murphy? Nope. All right. Mr. Ackerman, you've got two minutes rebuttal. We can't hear you. I was on. I was muted. Anyway, to address the issues of Buck and Dubik, there has to be a course of continuing conduct by the defendant. There is nothing in the state case that was a continuing course of conduct that related to the RICO case. I mean, Dubik had to do with a related course of conduct and retaliation. Buck had to do with related conduct and discrimination. Here, the only related pattern of conduct was the conduct exhibited by these defendants in the years of going after these 10 other victims. The idea that there was some kind of finding of no conversion, that is not what the court found. The court found very specific facts that related to dismissing the conversion count. It found that basically Packard Square breached the contract by not meeting the milestones. We are not disputing any of that. We are not disputing any of those milestones. As to the res judicata, we have two bases upon which this court can find that res judicata does not apply. One is the fact that we really couldn't bring the RICO case until the forfeiture judgment had been entered. The forfeiture judgment hadn't been entered until the end of the state court case. How about when the receiver was appointed? I mean, at that point, you've here, just as this court has recognized in Jackson and Irizarry, or Isaac, is that the object of the scheme was to steal the property. The whole point of the counterclaims... So what happens if the forfeiture judgment wasn't... Say they dismissed it before there was a judgment. No RICO claim then? No RICO claim. That's right. Really? So all the... There had to be a forfeiture. That was the RICO damage. All the interest that you pay, the various acts, the predicate acts that you're alleging that where money was lost, all that is not a cognizable injury? No. The cognizable injury that we alleged here has to do with the foreclosure. It's just like in the Isaac case. There was all kinds of little injury that befell the various defendants, the plaintiffs in that case, but yet the object of the scheme was a bust-out scheme to put it into bankruptcy. And that was the point at which the RICO claim became ripe. Here, the RICO claim didn't become ripe until the point at which the foreclosure judgment was entered. I still don't understand that. You've got RICO damages before the foreclosure, do you not? Well, you did. And I suppose you can make the same argument in Isaac. People were damaged in their use of the property. The property wasn't being developed the way it was promised. But what we've alleged in this complaint is what's critical. That is, what is the object of the scheme? The object of the scheme was to steal the property. In addition, if you look at the elements in Adair, the other reason for finding that res judicata does not apply is because it Mr. Carpenter didn't dispute what I said about that in terms of the geography of where all this all occurred. He didn't dispute that. In terms of the point of origin, he didn't dispute that this all started with the defendant's RICO action that was perpetrated as early as 2013, that the motivation here was an intent to defraud as opposed to simply a breach of contract. And there's no question that the convenient trial unit here had to do with the RICO case being separate from the contract case where you have six individual defendants, three other corporate defendants. It just doesn't make sense that you would put these two together. Okay. Thank you. Any further questions? Judge Batchelder? Judge Murphy? No. Okay. Thank you, counsel, for your arguments. The case will be submitted.